MISSISSIPPI ELECTRIC Co. *v.* HARTFORD FIRE INS. Co.

[63 South. 231.]

1. INSURANCE. *Insurance policy. Right to reformations. Principal and agent. Authority of agent.*

   Where a policy of insurance upon an automobile was cancelled by the insurer and the agent who issued the cancelled policy, having no other company that would write a similar policy, obtained from an agency of another company, under an agreement for a division of commissions, a different policy, which insured the machine only while it was in the garage, after telling insured that he would get a policy similar to the cancelled policy, and the insured knew at the time, that any agent assuming to act for the last company in insuring the machine would exceed his authority if he undertook to bind the insurer by any other form of contract than that written and delivered, and when a loss occurred which was not covered by the last policy, in such case insured was not entitled to a reformation of the policy on the ground that the agent procuring it had agreed to procure a policy similar to the one cancelled, which would have covered the loss.

2. SAME.

   A principal cannot be bound by the unauthorized acts of his agent, where the party dealing with the agent knows that the agent is acting in direct violation of the instructions of the principal.

APPEAL from the chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Suit by the Mississippi Electric Company against the Hartford Fire Insurance Company. From a decree for defendant, complainant appeals.

The facts are fully stated in the opinion of the court.

*Hirsh, Dent & Landan,* attorneys for appellant.

*McLaurin, Armistead & Brien,* attorneys for appellee.

Counsel on both sides filed elaborate briefs too long for publication.

. Argued orally by *Jos. Hirsch* for appellant and *A. A. Armistead,* for appellee.

Cook, J., delivered the opinion of the court.

Appellant begun this action in the chancery court of Warren count by bill asking the reformation of a certain insurance policy issued by the Vicksburg agency of appellee. The chancellor, after hearing full proof, denied the relief prayed for, and dismissed the bill.

The allegations of the bill, if true, would entitle appellant to relief; but appellee, in its answer, denied all the allegations of the bill, and, upon the evidence, the chancellor entered the decree. We believe it to be unnecessary to review the evidence offered by appellant, because we think the allegations of the bill were supported by evidence, and the chancellor would have been warranted in granting the prayer of the bill. This being the case, we will consider the case from appellee's standpoint, for the purpose of testing the conclusions reached by the trial court.

It appears that appellant was engaged in the public business of running automobiles for hire, and had obtained from the Wilkerson Insurance Agency, of Vicksburg, a policy insuring a certain White Steamer automobile from loss by fire. This risk was originally written in the Firemen's Fund Insurance Company, for the sum of two thousand dollars; but the company, for some reason, ordered its agency to cancel the same. The Wilkerson Agency did not represent any company which would rewrite this risk; so, in accordance with a custom, or understanding, between the insurance agents of Vicksburg, the Wilkerson Agency solicited the Flowers Agency, the regular agents of appellee in Vicksburg, to issue a policy covering this machine. A policy was issued in the Hartford Company, and was delivered to the Wilkerson Agency, and by them delivered to appellant. When the policy was delivered to the appellant, it had .

Wilkerson's "sticker" on it, which was, in effect, the business card of the Wilkerson Agency. The Wilkerson Agency paid the premium, and, by a custom of dealing between the insurance agents of Vicksburg, the Flowers Agency divided their commissions with them. When the policy was delivered by appellee's agency to the Wilkerson Agency, it was not read by the Flowers Agency, but was in turn delivered by them to appellant, who also failed to examine same until the fire, occurring about six months thereafter.

It is the contention of appellant that the contract made by them was for a policy exactly like the one canceled, and that the Hartford Company agreed to write this kind of policy, but by mistake a different policy was written, and this poilcy did not cover the loss. In order to maintain this contention, it is insisted that the dealings between the Wilkerson Agency and the Flowers Agency made the Wilkerson Agency the agent of the Hartford Insurance Company; that they had applied to the Wilkerson Agency for a policy like the one canceled by the Firemen's Fund Insurance Company, and they had agreed to obtain this policy; whereas, in fact they had delivered to them an entirely different policy, which only covered the automobile while it was in the garage.

The following statement of the law by Mr. Cooley, in his Briefs on the Law of Insurance, vol. 3, pp. 2529, 2530, is the principle relied on, viz.: "If an insurance agent, to whom a request for insurance is made, procures all or part of such insurance, through other agents, from a company not represented by him, and receives the policy written by such company for delivery to the applicant, he will generally be regarded as the agent of the company issuing the policy, especially if he receives a part of the premium as commission. The principle underlying this doctrine is that the company issuing the policy ratifies the acts of the first-named agent, and constitutes him its agent for that transaction by accepting the application

and by issuing and delivering the policy to him for further delivery to the applicant. Hence it follows that the company will be charged with knowledge of any information imparted to the agent at the time the insurance is written. It may be noted that in the Alkan, Bliss, and Sias Cases the doctrine was perhaps to some extent based on statutes making persons aiding an applicant in procuring insurance the agent of the insurance company. In the McElroy and Union Bank cases emphasis was laid on the fact that it was customary for insurance agents to place with agents of other companies part of the insurance applied for." ·

Appellee's evidence tends to show that appellant knew at the time they received this policy the Flowers Agency was the agents of appellee; that they also knew that the Wilkerson Agency was not authorized to make contracts of insurance for appellee. The evidence goes further, and shows that appellant knew that the policy actually delivered was the only policy which the Hartford Company would write upon the machine in question; that they were fully advised of this fact, and knew that no agent of the Hartford was authorized to write a policy like the one canceled. In other words, the evidence introduced by appellee shows the limitation placed by the Hartford upon its agents was known to appellee when it accepted the Hartford policy.

Viewing the case from appellee's standpoint, nothing was ever said about the Firemen's Fund policy. They wrote the policy exactly as they intended to write it. They had no authority to bind the Hartford by any different contract of insurance, and this was known to appellant. The chancellor could have believed appellant knew Wilkerson was not the agent of appellee; but Flowers was the agent, and when they accepted the policy they were fully advised that any agent assuming to act for appellee would exceed his authority if he undertook to bind the Hartford by any other form of contract than the contract actually written and delivered.

The principle announced by Mr. Cooley is probably the law of this state; but, in our opinion, it does not fit the case made by the evidence for appellee. In all of the cases examined by us we can find no warrant for holding that a principal can be bound by the unauthorized acts of his agent, and known to the party dealing with the agent to be in direct violation of the instructions of the principal.

*Affirmed.*